**Jon T. Simmons, ISB No. 5006**
**Scott R. Rowley, ISB No. 9808**
**EVANS KEANE LLP**
**1161 West River Street, Ste. 100**
**P. O. Box 959**
**Boise, Idaho 83701-0959**
**Telephone: (208) 384-1800**
**Facsimile: (208) 345-3514**
**Email:   jsimmons@evanskeane.com**
             **srowley@evanskeane.com**

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **DID, INC., dba DAMSEL IN DEFENSE,**<br><br>        **Plaintiff,**<br><br>**vs.**<br><br>**SKYLINE USA, INC., a Florida corporation,**<br><br>        **Defendant.** | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

DID, INC. dba Damsel in Defense ("DID"), for its Complaint against Defendants Skyline USA, Inc., pleads and alleges as follows:

### THE PARTIES

1.      Plaintiff DID, INC., dba Damsel in Defense is an Idaho corporation with its principal place of business at 12336 W. Overland Road, Boise, ID 83709.

2.      Defendant Skyline USA, Inc. ("Skyline") is a corporation organized and existing under the laws of the State of Florida. Skyline maintains its principal place of business in Sanford, Florida.

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 USC § 1332, in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

4. This Court has personal jurisdiction over Skyline pursuant to the U.S. Constitution in conjunction with the Idaho long arm statute, Idaho Code § 5-514, as Skyline transacted business within the State of Idaho.

**GENERAL ALLEGATIONS**

5. DID is a network marketing organization that provides goods and services in the personal defense industry. DID's products and services are tailored toward a largely female market.

6. Skyline is in the business of manufacturing and/or supplying parts and equipment in the personal defense industry.

7. In 2016, DID entered into an agreement with Skyline whereby Skyline would supply DID with stun guns manufactured by or on behalf of Skyline to DID's specifications and under DID's branding.

8. Beginning in 2016, Skyline delivered a number of units to DID which were non-conforming in that they were defective. The total number of defective units exceeded 10,000. For those units, DID rejected Skyline's non-conforming tender and returned the same to Skyline.

9. Following DID's rejection of Skyline's non-conforming tender of defective units, Skyline represented that it could cure the non-conforming tender by making repairs and/or improvements to the existing units and improvements in the design of future units. Skyline

represented that it would make such repairs and/or improvements in a good and workmanlike manner.

10. Skyline agreed to a strict timeline to modify and repair existing units, and to produce additional units according to revised specifications designed to correct quality issues.

11. Throughout 2017, DID worked with Skyline to correct the deficiencies in the design of and materials used in production of the units, and two small batches of units were shipped to DID for testing and inspection. Through this process, the parties agreed on remedies for the deficiencies in the units to be produced.

12. After the cures were identified and agreed upon by the parties, Skyline represented and agreed that the same could be incorporated into the existing units and that new units could be mass produced that incorporated the corrections.

13. Samples of the partially-corrected units were shipped to DID November of 2018. As a result, DID was able to approve minor additional modifications, a 100 count of final production units incorporating which were to be shipped to DID for approval by mid-December, 2018. DID did not receive samples of any fully-corrected units.

14. Due to no fault of DID, a series of repeated delays occurred and the final production unit sample was never shipped by Skyline. In March of 2019, Skyline contacted DID with an offer that DID "take over" the rework project on the stun guns. That offer was rejected by DID, with a demand that Skyline simply produce the original units to DID in a reworked and functional condition as originally promised.

15. Skyline has failed and refused to perform the terms of its agreement with DID relating to the production of functional stun gun units. Notwithstanding Skyline's utter failure to perform, and the fact that DID paid for the original shipment of 10,594 units that was rejected as

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

non-conforming, Skyline has nonetheless threatened to file a lawsuit against DID for the purported recovery of damages in excess of $400,000.

## COUNT I

### REQUEST FOR DECLARATORY JUDGMENT

16. DID restates the allegations contained in the preceding paragraphs and incorporates the same herein, as though fully set forth.

17. This matter presents an actual and justiciable case or controversy pursuant to Article III of the U.S. Constitution, and a judicial declaration of the rights and liabilities will terminate a defined portion of the controversy; namely, DID's liability or lack thereof owed to Skyline.

18. DID is entitled to a declaration of the rights and liabilities of the parties, including:

   a. A declaration that the initial 10,594 units shipped by Skyline were non-conforming to the parties' agreement and that DID's rejection of the same was rightful;

   b. A declaration that under the circumstances as alleged herein and as proven at the time of trial or otherwise, DID has no affirmative liability owed to Skyline arising out of a refusal to purchase conforming stun gun units; and

   c. A declaration that as a result of its payment for units that were rightfully rejected, DID is entitled to recover the amount of said payment as damages.

## COUNT II

### BREACH OF CONTRACT

19. DID restates the allegations contained in the preceding paragraphs and incorporates the same herein, as though fully set forth.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

20. Skyline's conduct, in initially failing to tender conforming goods and in subsequently failing to cure its non-conforming tender and provide conforming goods going forward in accordance with its own timeline constituted a breach of contract, including a breach of the implied warranty of merchantability; Skyline failed to produce and deliver conforming goods in accordance with the parties' agreement, and the goods it did tender would not pass without objection in the trade or industry.

21. Skyline's conduct also constituted a breach of the implied covenant of good faith and fair dealing in that Skyline did not deal with DID with honesty in fact and did not observe and adhere to reasonable standards and practices in the industry.

22. As a direct and foreseeable result of Skyline's breach of contract, DID has incurred damages in an amount to be proven at the time of trial. Such damages include, but are not limited to, lost profits and damages for lost opportunities.

## COUNT III

## **UNJUST ENRICHMENT**

23. DID restates the allegations contained in the preceding paragraphs and incorporates the same herein, as though fully set forth.

24. In the alternative, and in the event a contract is not found to exist between the parties, Skyline has been unjustly enriched by DID's payment for the initial shipment of 10,594 deficient and non-conforming units. Skyline should be required to disgorge said amounts by which it was unjustly enriched.

## **ATTORNEY FEES**

DID has been required to retain counsel to assist in the prosecution of this matter, and has retained the law firm of Evans Keane LLP. DID is entitled to recover its reasonable costs and

attorney fees incurred in the defense of this matter pursuant to Fed.R.Civ.P. 54, Sections 12-120 and 12-121, Idaho Code, or other applicable law.

## JURY DEMAND

DID hereby demands, pursuant to Fed.R.Civ.P. 38(b), a trial by jury on all issues

## PRAYER FOR RELIEF

WHEREFORE, DID, INC. prays for entry of judgment against Defendants as follows:

(a)     For a judicial declaration of the rights, obligations and respective liabilities of the parties under their agreement;

(b)     For an award of economic damages for Skyline's breach of contract;

(c)     In the alternative, for an award of damages representing the amount by which Skyline has been unjustly enriched; and

(d)     For such other and further relief as the Court deems just and proper.

DATED this 4th day of October, 2019.

                                      EVANS KEANE LLP

                                      By:     /s/ Jon T. Simmons
                                                 Jon T. Simmons, of the Firm
                                                 *Attorneys for Plaintiff*